IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **CHEQUITTA BRACKINS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| **vs.** ) | Civil Action Number |
| ) | **5:06-cv-0885-UWC** |
| **WESFAM RESTAURANTS, INC.,** ) | |
| **d/b/a BURGER KING,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this action brought under 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981**,** and various state laws, Plaintiff Chequitta Brackins ("Brackins") maintains that she was treated differently because of her pregnancy and race, and that she was retaliatorily discharged by Defendant Wesfam Restaurants, Inc., d/b/a "Burger King"("Burger King").[1]  Burger King has moved for summary judgment on all of Plaintiff's claims.[2]

Based on the genuinely disputed facts, the motion is due to be denied in most

---

[1]Plaintiff's federal claims include race discrimination, pregnancy discrimination, a racially hostile work environment, and retaliatory termination. Her state law claims include wrongful termination and negligent/wanton supervision.

[2]Burger King seeks summary judgment on the merits of Plaintiff's federal claims, and it maintains that Plaintiff is collaterally estopped to pursue her state law claims in this forum, as well as any claims under 42 U.S.C. § 1981.

aspects. However, on two/three of Plaintiffs's claims, the motion is due to be granted.

## A. The Undisputed Facts [3]

1. Burger King has a policy against race discrimination embodied in its Employee Handbook, which is distributed to each new employee. Complaints of race discrimination are to be "reported immediately to the Human Resources Department." Plaintiff received a copy of this Handbook when she was hired.(Def.'s Ex. A, Brackins Depo. at 44.)

2. Plaintiff, a black female, was hired by Burger King in April 2002 as a crewmember at the Burger King Store on the Beltline in Decatur, Alabama. A majority of the employees at the Beltline Store are blacks.

3. Around November 3, 2004, Plaintiff learned that she was pregnant. She informed the store managers soon thereafter. (Brackins Depo. at 41, 47.)

4. On November 27, 2004. Brackins was asked by the white store manager, Melinda Alexander ("Alexander"), to go outside and take orders in Burger King's Drive-thru line. Plaintiff asked to be assigned to a different task because she was sick and felt that having to walk around outside would make her feel worse.

---

[3]Because the facts and reasonable inferences are construed most favorably in favor of the opponent to summary judgment, these facts are undisputed only for purposes of the summary judgment motion.

Alexander responded to the request by informing Plaintiff that while she could go home, she should look for another job. Plaintiff then informed Alexander that she felt that she was being fired because she was pregnant. At this point, Alexander apologized and permitted Plaintiff to go home without penalty.

5. On the same day, November 28, 2004, Chere`e Jordan, a pregnant white female co-worker, Chere'e Jordan, was not asked by Alexander to work outside. Alexander had permitted Jordan, to go home for personal reasons on many occasions. (Brackins Depo., at 40; 120-21; Unemployment Hr'g. Tr. at 34-35, Pl.'s Ex. F.)

6. On December 6, 2004. Plaintiff and a white co-worker, Janet Davis, became engaged in a heated argument. Alexander witnessed the argument. Thereafter, Alexander ordered Plaintiff to leave the workplace; but she allowed Davis to remain on the premises. As Plaintiff was leaving the workplace, she encountered Don Wagoner, the Area Manager, as he entered into the Burger King. Later that day, Plaintiff telephoned Wagoner and complained to him that she felt that she was being treated differently than Davis because of her race. Wagoner promised to investigate the complaint. (Brackins Depo., at 64-65, 73-78, 163-165.)

7. On the morning of December 8, 2004. Wagoner, Alexander, and Liz Mason ("Mason"), the manager on duty at the time, called Plaintiff into Alexander's office.

They told her that while doing a spot check of the store's digital surveillance recordings a day earlier, Alexander had seen her and another black co-worker, Porsia Steele ("Steele"), eating Burger-King breakfasts for which they had not paid. At the time, according to Alexander, the store had not opened and its registers were closed.

8. Alexander and Wagoner fired Plaintiff and Steele on the following day, ostensibly for violation of Burger King's policy forbidding the unauthorized consumption of food by employees.

9. When Plaintiff was informed of her discharge, she informed Wagoner that other employees had also eaten food without paying for it. (Wagoner Depo. at 60 and Ex. 14). Wagoner responded, "Well, eventually I am going to let them go, too, but right now you just need to clock out and go." (Brackins Depo. at 70).

10. A few days after her discharge, Plaintiff contacted Burger King's main office, spoke to a John Wessell, and provided him with the specific names of other employees who had eaten meals while on the job without paying for them–including white employees Chere`e Jordan and Denise Shedd.

11. If other employees had eaten meals without paying for such meals on the date on which Plaintiff did the same, the video tape (which was used as the basis for Plaintiff's termination) would have disclosed their identity.

12. Burger King destroyed the videotape which was used as the basis for

Plaintiff's discharge.

13. According to Alexander, there should be the same number of employee meal tickets as shown on the daily sales reports. But there are no employee meal tickets for December 4 - 6, 2004, despite daily sales reports showing employee meals.

14. Notwithstanding Burger King's official written policy, in practice many store managers permit employees to consume Burger King food before the start of their shifts without paying for it. (Brackins Depo. at 103; Alexander Depo. at 41-42, 53, 19-21, 54, 10-13; Pl. Ev. Sub. 8 & 9.)

15. The surveillance videotapes which reflected Plaintiff and Steele eating Burger King food without paying for it would also have shown whether white employees (such as Denise Shedd, Amy Rutherford, and Cherie Jordan) also ate Burger King food without paying for it and without penalty.

16. A few days after her termination, Plaintiff further claims that she contacted the main office a few days later and spoke with John Wessell ("Wessell") in Burger King's Human Resources Department about her termination. She specifically gave him the names of the white employees who were also eating food and were not disciplined. (Brackins Depo. 79-82.)

17. On the same date and at the same time that the Plaintiff and Portia Steele

ate Burger King meals without paying for them, white employees also ate meals without paying for them. The white employees were not terminated for this violation of company policy.

18. After her termination, Brackins applied for unemployment benefits with the Department of Industrial Relations. An Unemployment Hearing was held January 31, 2005, and the Administrative Hearing Officer issued a decision on February 10, 2005, in which he found that Brackins had been discharged for the unauthorized consumption of food. Thus, Brackins was disqualified to receive unemployment compensation benefits.

## II. CONTROLLING LEGAL PRINCIPLES

### A. Pregnancy Discrimination

To establish a claim of pregnancy discrimination, a plaintiff must prove that: (1) she belongs to a protected class, *i.e.*, she was pregnant; (2) she was subjected to an adverse employment action; (3) similarly situated, non-pregnant employees were treated more favorably; and (4) she was qualified to perform the job. *See Knight v. Baptist Hospital of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003); *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

### B. Racial Discrimination

Race discrimination claims based on circumstantial evidence are evaluated

under the *McDonnell Douglas* burden shifting framework:

> To establish a *prima facie* case for disparate treatment in a race discrimination case, the plaintiff must show that: (1) s[h]e is a member of a protected class; (2) s[h]e was subjected to an adverse employment action; (3) [her] employer treated similarly situated employees outside of [her] protected class more favorably than s[h]e was treated; and (4) [she] was qualified to do the job.

*Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citations omitted). Under this framework, if the plaintiff successfully establishes a prima facie case for discrimination, then the defendant must show a legitimate, non-discriminatory reason for its employment action. If the defendant succeeds, then the plaintiff must come forward with evidence that the reason provided by the defendant is a pretext for unlawful discrimination. *See Burke-Fowler*, 447 F.3d at 1323.

## C. Retaliation

To establish a *prima facie* case for retaliation, the plaintiff must show: "1) a statutorily protected expression; 2) an adverse employment action; and 3) a causal link between the protected expression and the adverse action" *Sullivan v. National R.R. Passenger Corp.,* 170 F.3d 1056, 1059 (11th Cir. 1999) With respect to the third criterion, "[t]he 'causal link' element [requires] merely that the Plaintiff establish the protected activity and the adverse action are not wholly unrelated." *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 920 (11th Cir. 1993). Moreover, when the

protected conduct and the termination occur very close in time, the termination is presumed to be related. *See Clark County Sch. District v. Breeden,* 532 U.S. 268, 273 (2001).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to rebut the presumption of retaliation by producing a legitimate, non-retaliatory reason for the adverse employment action.

If the defendant articulates a legitimate, non-retaliatory reason for the challenged action, the plaintiff must then establish that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct. *See Sullivan,* 170 F.3d at 1059.

### D. Racially Hostile Work Environment

To prove a claim of a racially hostile work environment, a plaintiff must "demonstrate that the actions of the defendants altered the condition of the workplace, creating an objectively abusive and hostile atmosphere." *Edwards v. Wallace Community College*, 49 F. 3d 1517, 1521 (11th Cir. 1995). *See also Faragher v. city of Boca Raton*, 524 U.S. 775, 787-88 (1998).

### E. Collateral Estoppel

The Eleventh Circuit has not addressed the issue of preclusion based on the findings of a state administrative decision, (Def. Reply, Doc. 24, p. 7.)

Under Alabama law, the doctrine of collateral estoppel only applies to an issue raised in an administrative proceeding where

> (1) there are identical parties or their privies; (2) the issues are identical; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision.

*Wal-Mart v. Smitherman*, 743 So. 2d 442, 445 (Ala. 1999).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue as to any material fact and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also* Fed. R. Civ. P. 56(c).

The party requesting summary judgment always has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979). Evidence that is merely colorable, conclusory, or conjectural does not create a genuine issue of material fact. *See, e.g., Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir.

1989).

## DISCUSSION

### A. Pregnancy Discrimination

Plaintiff has not established her claim for pregnancy discrimination. Her comparator is another pregnant employee. The treatment of another pregnant employee is insufficient to establish the third element of Plaintiff's claim - namely, that similarly situated, non-pregnant employees were treated more favorably.

Because Plaintiff has failed to establish her claim of pregnancy discrimination, Burger King is entitled to summary judgment on the claim.

### B. Racially Disparate Discipline

Plaintiff claims that because she was sent home after a heated argument with white employee Janet Davis, Burger King's failure to mete out equal treatment to Davis amounts to racial discrimination. She has clearly made a *prima facie* showing on this claim. Davis is similar "in all relevant respects." *See Silvera v. Orange County School Board*, 244 F.3d 1253, 1259 (11th Cir. 2001).

Burger King's legitimate, non-discriminatory reason for its disparate treatment is that following the argument, and after having been warned by her supervisor not to do so, Plaintiff continued to talk about the argument with her co-workers.

Plaintiff's evidence is insufficient to call into question Burger King's good

faith belief that she continued to talk about the argument after being cautioned not to do so.

Accordingly, Burger King is entitled to summary judgment on Plaintiff's claim that she was disciplined because of her race.

### C. Racially Discriminatory Job Assignment

Plaintiff has made a *prima facie* case of a race discrimination by showing that she was assigned to work outside in the Drive-thru while a pregnant white employee was not so assigned.

Burger King has not articulated a legitimate, non-discriminatory reason for this assignment. Thus, its motion for summary judgment on this claim is due to be denied.

### D. Retaliation

Plaintiff has likewise established a *prima facie* case of retaliation. It is undisputed that she made a complaint of racial discrimination to her supervisor following the racially discriminatory job assignment, and that she complained of racial discrimination to Burger King's main office after being sent home following the argument with Janet Davis. Within two days subsequent to the latter protected expression, Plaintiff was terminated.

Burger King has articulated a legitimate, non-discriminatory reason for the discharge. It maintains that Plaintiff and another black employee were terminated

after a video tape revealed that they had violated Company policy by eating Company meals without paying for them.

For summary judgment purposes, Plaintiff has shown that the articulated reason for her discharge is a pretext for unlawful discrimination, unworthy of credence. *See Burke-Fowler,* 447 F.3d at 1323. The testimony of Plaintiff and Portia Steele shows that white employees who transgressed the same policy were not discharged. There is credible evidence that various Burger King managers, including Plaintiff's immediate supervisor, were aware that the policy was honored more in its breach than in its observance.

Moreover, the adverse inference drawn from the Company's destruction of the very evidence which would have simultaneously inculpated the Plaintiff and exonerated the white employees is itself fatal to the articulated reason. The conflicting and incredulous accounts of the various Burger King managers concerning the handling of the video tape only further undermine the credibility of the Company's articulated reason. (*See* Alexander Depo. at 68-70, Mason Depo. at 22-24, and Wagoner Depo. at 26.) Moreover, there is evidence, in the form of Porsia Steele's affidavit, that Liz Mason, the breakfast manager at the time of the alleged incident and who also participated in Brackins' termination, was aware of the violations of company policy and did not enforce them.

These facts and inferences raise more than the mere specter of pretext. Taken in concert, they tend to establish "both that the [articulated] reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 512, n.4 (1993).

### E. Racially Hostile Work Environment

Brackins has failed to establish that she was exposed to a hostile work environment because she failed to show that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17 (1993). Brackins has presented no evidence that would rise to this level nor has she effectively responded to Wesfam's Motion for Summary Judgment on the issue. As such, Wesfam's Motion is due to be granted with respect to the hostile work environment claim.

### F. Collateral Estoppel

Brackins is not collaterally estopped and her claims are due to proceed in the current action. This Court is not convinced that all five of the *Wal-Mart v. Smitherman*, 743 So. 2d 442, 445 (Ala. 1999) criteria have been met. Most notably, as to the second criterion, the issues in Brackins' unemployment hearing were not identical to her claims in the present action. According to the Administrative Law

Judge ("ALJ"), the sole issue at the administrative hearing was "whether the claimant was discharged or removed from work for committing a dishonest or criminal act in connection with her work." (Unemployment Hr'g. Tr. at 3, Defs. Ex. F.)  Contrary to Wesfam's contentions, that issue is not before this Court.  The issues here concern various forms of discrimination under Title VII and § 1981.  It should be self-evident that whether Brackins committed a dishonest act in the workplace and whether she was discriminated against in the workplace are not mutually exclusive.  Moreover, there is little evidence in the Unemployment Hearing Transcript indicating that the ALJ inquired into matters of discrimination at all.  As such, there is no identity of issues and the second criterion has not been met.  Therefore, Brackins' § 1981 claims of discrimination and her state law claim of negligence arising out of her termination are not collaterally estopped and are due to proceed in this action.

## CONCLUSION

Based on the existence of genuinely disputed material facts, Defendant's Motion for Summary Judgment is due to be denied in part and granted in part.  Specifically, Wesfam's Motion for Summary Judgment on Brackins' pregnancy discrimination claim is due to be granted.  Additionally, Wesfam's Motion for Summary Judgment on Brackins' racially disparate discipline claim and her hostile work environment claim is due to be granted.  Based on the genuinely

disputed facts, Wesfam's motion is due to be denied on the remainder of Brackins' claims.

Done the 16th day of January, 2008.

                                                  U.W. Clemon
                                    United States District Judge